UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
-----------------------------------------------------x
MICHELE MONSON                          :
        Plaintiff,                      :      CIVIL ACTION NO.
                                        :      3:09CV1096 (MRK)
vs.                                     :
                                        :
THE WHITBY SCHOOL, INC.                 :
        Defendant.                      :      MAY 5, 2010
-----------------------------------------------------x
```

## AMENDED ANSWER TO COMPLAINT and COUNTERCLAIMS

In as much as the introduction does not contain any allegations against the defendant, the

defendant does not respond to this statement.

## I.    JURISDICTION

1.      The defendant is without knowledge or information sufficient to form a belief as

to the truth of Paragraph 1.

2.      Paragraph 2 is admitted.

## II.   PARTIES

3.      The defendant is without knowledge or information sufficient to form a belief as

to the truth of Paragraph 3.

4.      Paragraph 4 is admitted.

III. **STATEMENT OF FACTS**

5.     The defendant is without knowledge or information sufficient to form a belief as to the truth of Paragraph 5.

6.     The portion of paragraph 6 which states "[i]n the summer of 2000, Dr. Monson was actively recruited by defendant The Whitby School, Inc. ("Whitby") to serve as Head of School" is denied.   The remaining portion of Paragraph 6 is admitted.

7.     It is admitted that the plaintiff served as Head of School at Whitby from on or about 2000 until March 8, 2008, when she was notified that she would no longer be Head of School and was asked to resign.  It is denied that the plaintiff had an extremely successful tenure to the benefit of Whitby.

8.     Those portions of Paragraph 8 which state "at the time that Dr. Monson assumed the position of Head of School, Whitby's teacher salaries were below market levels", and "Dr. Monson implemented needed curriculum changes, faculty and administrative performance accountability standards" are admitted; however, the word "needed" is denied.  Those portions of Paragraph 8 which state "there was no teacher accountability", there was no administrative or faculty performance management evaluation processes", "there was inadequate curriculum for all but the pre-school grades", "the school suffered from a deeply entrenched culture that was resistant to necessary changes" and "[Dr. Monson] reformed the business and admissions offices (where she had uncovered serious problems)" and "created a more sophisticated and professional structure necessary to make the school competitive in the private school marketplace in the region" are denied.  That portion of Paragraph 8 which states "during Dr. Monson's tenure, she

developed a strategic plan for the school" is admitted; however the plan was done in association with the Board of Trustees.

9.  It is admitted that as a result of the successes that the plaintiff inaccurately purported to have achieved, her contract was renewed in June 2004 for a four-year term.

10.  It is admitted that Whitby was successfully accredited from the American Montessori Society ("AMS") and the Connecticut Association of Independent Schools ("CAIS") while Dr. Monson was Head of School. It is also admitted that the plaintiff had some limited successes in implementing the five-year Strategic Plan. Those portions of Paragraph 10 which state "The accreditation from CAIS was particularly significant as the association had informed the school that they would not participate in a joint accreditation with AMS and that the School had to meet standards exclusive to CAIS", and "Dr, Monson's leadership in securing accreditation for the school from CAIS reflected the substantial improvement of the curriculum and the quality of the faculty, and the implementation of best practices policies and organizational changes achieved during her tenure", the defendant is without knowledge or information sufficient to form a belief as to the truth of these averments. Those portions of Paragraph 10 which state "the accreditation from AMS was also significant since changes at Whitby being implemented as part of the school's strategic plan were contrary to AMS's existing requirements for academic grouping" and "AMS modified its accreditation standards as a result of Dr. Monson's petition for variance, and allowed accreditation of a new program grouping structure, the Middle Elementary" are admitted.

11.     Those portions of Paragraph 11 which state "during her employment as Head of School, Dr. Monson was also extremely successful in making Whitby considerably more visible in the area of independent school community", "Dr. Monson was the first Whitby Head of School to attend meetings of heads of school in Fairfield and Westchester counties" are denied. Those portions of Paragraph 11 which state "Dr. Monson served on accreditation committees evaluating other independent schools", "Dr. Monson attended and spoke at national and international educational conferences, published articles in several educational journals, and was selected as a Klingenstein Fellow from the Klingenstein Center for Independent School Education at Teachers College, Columbia University" are admitted. As to that portion of Paragraph 11 which states "Dr. Monson oversaw successful capital campaigns and building projects which increased the size of the Whitby campus, made it possible for Whitby to add new academic programs and resulted in increased retention of students into the elementary and middle school programs," it is admitted that as Head of School, Dr. Monson was responsible to oversee the capital campaign, which was conducted by volunteers, and building projects; however, the defendant is without knowledge or information sufficient to admit or deny whether the campaign and/or projects made it possible for new academic programs or resulted in increased retention. The defendant denies that the alleged efforts of Dr. Monson increased the size of the Whitby School campus. Those portions of Paragraph 11 which state "Dr. Monson participated actively in mentoring efforts with other heads of schools in the tri-state region" and "Dr. Monson served on committees for CAIS and AMS", the defendant is without knowledge or information sufficient to form a belief as to the truth of these allegations.

12.     It is admitted that based on the plaintiff's misrepresentations about her job performance and contributions to the school, she was awarded bonuses on top of her base salary of either 4.5% or 5% during her tenure at the Whitby School. It is also admitted that 5% of Dr. Monson's base salary was the maximum possible discretionary bonus. As to the rest and remaining allegations of Paragraph 12, the defendant has insufficient knowledge or information sufficient to form a belief as to the truth of this allegation.

13.     That portion of paragraph 13 which states "[a]t all times relevant herein, decisions concerning the retention and contract terms for Whitby's Head of School are referred in the first instance to the Head's Mentoring Committee of Whitby's Board of Trustees" is admitted   It is also admitted that in April 2007, based on the plaintiff's misrepresentation of her success on behalf of the school, the Head's Mentoring Committee evaluated Dr. Monson and recommended that her contract be renewed for a six year term to end on June 30, 2013. It is, therefore, denied that the plaintiff's contract was renewed as a result of her successes.

14.     That portion of paragraph 14 which states "[t]he recommendation of the Head's Mentoring Committee for a second renewal of Dr. Monson's contract was particularly reflective of her success as Head of School" is denied. To the extent that the allegations pertain to the substantive terms of the contract, the contract speaks for itself. It is denied that Whitby's Board of Trustees approached Dr. Monson about the renewal in the spring of 2007.

15.     Paragraph 15 is admitted.

16.     It is admitted that, at the time of the renewal of the plaintiff's contract, the Board of Trustees wanted to keep her employed as Head of School. That portion of the paragraph

which states "And, notwithstanding that her then-current contract did not expire until July 2008, the then-Board insisted that the new contract go into effect immediately so as to raise her compensation to a level competitive with other Head of School positions in the Fairfield County – Westchester County area" is denied. It is denied that the Board took "affirmative action" to send a "strong and positive message".

17.     To the extent that the allegations call for a legal conclusion, no response is required. To the extent that the allegations pertain to the substantive terms of the contract, the contract speaks for itself.

18.     To the extent that the allegations call for a legal conclusion, no response is required. To the extent that the allegations pertain to the substantive terms of the contract, the contract speaks for itself.

19.     It is admitted that prior to the start of the 2007-2008 school year, the Head's Mentoring Committee met with Dr. Monson and established performance goals for the upcoming year, and that the goals included improving operations in the business office and taking a more active role in the Parent's Association. As to the specific goals set forth in Paragraph 19, the defendant is without knowledge or information sufficient to form a belief as to the truth of this averment.

20.     It is denied that the plaintiff substantially achieved all performance goals. It is further denied that it was the plaintiff who "had obtained candidate status for the school programs for international accreditation well before the deadline" or "made substantial progress toward an accelerated schedule for the actual accreditation in the next school year." That portion

of Paragraph 20 which states "[w]ith respect to her goal of enhancing coordination with the Parent's Association, Dr. Monson had developed a new position of Assistant to the Head of School for Community Relations, hired a candidate for the position and implemented procedures for coordinating Parent Association communications through the Head's office" is admitted. Any implication in this paragraph that the new position and procedures were successfully implemented is denied. That portion of Paragraph 20 which states "and established the new position as a *de facto* secretary to the president of the Parent's Association" is denied. That portion of Paragraph 20 which states "[w]ith respect to the goal of improving the school's business operations, Dr. Monson worked closely with the Treasurer and Finance Committee of the Board of Trustees (which was charged under Whitby's charter with the authority to hire and set the salary for a full-time chief Financial Officer) to identify candidates for the CFO position" is denied. Insofar as Paragraph 20 states "[a]nd because Whitby had historically had significant difficulty hiring a full-time CFO, Dr. Monson recommended an outside accounting firm, and worked closely with that outside firm and the school's Treasurer to fill the void left by the lack of CFO" is admitted. Any implication that the need to hire an outside accounting firm was a credit to Dr. Monson is denied inasmuch as it was Dr. Monson's inability to hire a CFO and ensure the business affairs of Whitby were properly arranged that led to the necessity of hiring an outside accounting firm.

21.      Paragraph 21 is admitted.

22.      It is admitted that Richard Lukaj became a member of the Board of Trustees on November 1, 2007. It is denied that Vasan caused Richard Lukaj to be a member. The portion

of paragraph 22 which states "Defendant Lukaj's appointment as a trustee of the Whitby School occurred in derogation of the governance process required under the school's charter in that Lukaj was not vetted by the Governance Committee of the Board responsible for approving new candidates for the Board" is denied.

23. Paragraph 23 is denied.

24. Paragraph 24 is denied.

25. Paragraph 25 is denied

26. Paragraph 26 is denied.

27. To the extent that the allegations pertain to the substantive terms of the by-laws, the by-laws speak for themselves. That portion of Paragraph 27 which states "During the Board term beginning in July 2007, the presidency of the Parents' Association was jointly held by a husband and wife team" is admitted. As to that portion which states "Notwithstanding that there were two co-Presidents of the Parents' Association, Vasan appointed only the husband to serve as an *ex officio* member of the Board of Trustees" it is denied that it was Vasan's decision to appoint only the husband.

28. It is denied that as of July 1, 2007 the senior administrative team at the school consisted of the plaintiff, Valerie McCollum and Debbie Smith, and it is further denied that the team was entirely female. Those portions of the paragraph which state "Vasan also determined to remove the senior administrative team at Whitby and to replace them with male successors" and "Within nine months, Vasan had effected the removal of all three members of that team, and replacement by male counterparts" are denied.

- 8 -

a.     It is admitted that in the late fall of 2007, Valerie McCollum was the only employee in the business office of the school. It is further admitted that the CFO position was then vacant. As to the plaintiff's understanding, the defendant has insufficient knowledge or information to form a belief as to the truth of the allegations. The rest and remaining allegations are denied.

b.     It is admitted that Ms. Smith was discharged on February 11, 2008. Any implication in this subparagraph that the decision to discharge Ms. Smith was made by Vasan or any other person other than by the plaintiff is denied. The remaining allegation is also denied.

c.     To the extent that these allegations are based on the plaintiff's understanding, the defendant has insufficient knowledge or information to form a belief as to the truth of the allegations. The defendant denies each and every remaining allegation including any implication that the Board ever sought replacement for Ms. McCollum's and Ms. Smith's positions.

d.     To the extent that these allegations are based on the plaintiff's understanding, the defendant has insufficient knowledge or information to form a belief as to the truth of the allegations. The defendant denies each and every remaining allegation including any implication that the Board hired male replacements for Ms. McCollum's and Ms. Smith's positions.

29.     It is denied that "Vasan also openly expressed contempt for the role of women (and plaintiff's role as a woman) in Whitby's governance and disparaged women's contributions to the school." It is admitted that Mr. Vasan encouraged fathers to be included on the email list.

That portion of Paragraph 29 which states "[w]hen Vasan learned that a substantial number of the school's fathers were not on our list, he wrote to Dr. Monson indicating that he considered the list to be inadequate since communications about important matters of school governance should be sent to fathers, not the mothers" is denied. That portion of Paragraph 29 which states "[a]fter initially directing Dr. Monson to write the fathers to obtain their email address, Vasan changed his mind and indicated that he would write the fathers since the fathers would not be expected to be responsive to (or take seriously) a communication from Dr. Monson, a female" is denied. As to the rest and remaining portions of Paragraph 29 which were not specifically addressed, the defendant has insufficient knowledge or information to form a belief as to the truth of the allegations.

30.     As to the plaintiff's understanding, the defendant has insufficient knowledge or information to form a belief as to the truth of the allegations. It is admitted that at the open Parents' Association meeting, the Board asked Vasan to also encourage fathers to include their email address on the list as the parents were disconnected with the school and the Board expressed the sentiment that communication must be with both mothers and fathers, in order to properly involve both parents in the school. The remaining allegations in Paragraph 30 are denied.

31.     To the extent that these allegations are based on the plaintiff's understanding, the defendant has insufficient knowledge or information to form a belief as to the truth of the allegations. The rest and remaining allegations of Paragraph 31 are denied.

32.     To the extent that the allegations pertain to the substantive terms of the contract, the contract speaks for itself. The rest and remaining allegations are denied.

33.     Paragraph 33 is denied.

34.     As to the plaintiff's belief, the defendant has insufficient knowledge or information to form a belief as to the truth of the allegations. It is denied that the defendant identified a candidate to replace Dr. Monson as Head of School by early March 2008. As to the portion of Paragraph 34 which states "The candidate who ultimately replaced Dr. Monson was a male who had previously been interviewed by Dr. Monson for a position as Assistant Head for the school", the defendant has insufficient knowledge or information to form a belief as to the truth of the allegations. As to the portion of Paragraph 34 which states "and hired by Dr. Monson to be a speaker at Whitby's 'Father's Day' event in the fall of 2007", it is denied that the candidate was "hired" to be a speaker, rather the candidate volunteered to discuss the International Baccalaureate Program with parents. It is admitted that the plaintiff's replacement was a male.

35.     It is admitted that "On Saturday March 8, 2008, Vasan met with Dr. Monson and asked her to resign as Head of School." The rest and remaining allegations are denied, including any implication that the Chief Operating Officer was the plaintiff's replacement.

36.     It is admitted that Vasan gave the plaintiff the option of resignation rather than termination. The rest of paragraph 36 is denied.

37.     The allegations of Paragraph 37 are admitted, except that the word "demanded" is denied.

38.     To the extent that Paragraph 38 pertains to a written separation offer, the document speaks for itself. All remaining allegations in this paragraph are denied.

39.     The portion of Paragraph 39 which states "On Tuesday, March 11, the school publicly posted signs announcing an important Parents' Association meeting scheduled to be held two days later (presumably to announce Dr. Monson's replacement.)" is denied. Those portions of Paragraph 39 which state "that same day, Lukaj met with Dr. Monson and advised her that the Board was seeking her resignation" and "Lukaj indicated that the Board needed a decision from Dr. Monson before the close of business that day" is admitted. That portion of Paragraph 39 which states "because it was being pressured by big donors who were threatening to leave the school" is denied.

40.     It is admitted that on March 11, 2008, the defendant submitted a letter to the plaintiff notifying her of her discharge. With respect to the allegations pertaining to the substance of the letter, the letter speaks for itself. The defendants deny the word "purporting." As to when the letter was received, the defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation.

41.     Those portions of Paragraph 41 which state "the letter dated March 11, 2008 was the first written communication received by Dr. Monson from the defendant purporting to allege any deficiency in her performance of her duties as Head of School" and "Indeed, Dr. Monson had, in fact, continued to meet with the Head's Mentoring Committee throughout the 2007-2008 school year and, in meetings held as late as the end of February 2008, the Head's Mentoring Committee had not raised any concerns about Dr. Monson's performance, but rather continued to

voice strong support of Dr. Monson" are denied. The defendant denies the word "purporting." As to the allegations pertaining to the substance of the contract, the contract speaks for itself. To the extent that the allegations in this paragraph call for a legal conclusion, no answer is required. To the extent that an answer is required, such allegations are denied.

42. Paragraph 42 is denied.

## IV. CLAIMS FOR RELIEF

### A. FIRST CLAIM FOR RELIEF [Violation of Title VII as to defendant The Whitby School, Inc.]

1-42. The answers to Paragraphs 1 through 42 of this Complaint are incorporated herein and made the answers to Paragraphs 1 through 42 of this First Claim for Relief.

43. The defendant is without knowledge or information sufficient to form a belief as to the truth of Paragraph 43.

44. Paragraph 44 is denied.

45. Paragraph 45 is denied.

46. Paragraph 46 is denied.

### B. SECOND CLAIM FOR RELIEF [Violation of the Connecticut Fair Employment Act as to defendant The Whitby School, Inc.]

1-43. The answers to Paragraphs 1 through 43 of the First Claim for Relief are incorporated herein and made the answers to Paragraphs 1 through 43 of this Second Claim for Relief.

44. Paragraph 44 is denied.

45. Paragraph 45 is denied.

46. Paragraph 46 is denied.

**C.**     **THIRD CLAIM FOR RELIEF [Breach of Contract as to defendant     The Whitby School, Inc.]**

1-42. The answers to Paragraphs 1 through 42 of the First Claim for Relief are incorporated herein and made the answers to Paragraphs 1 through 42 of this Third Claim for Relief.

43. Paragraph 43 is denied.

44. Paragraph 44 is denied.

45. The defendant is without knowledge or information sufficient to form a belief as to the truth of Paragraph 45.

## AS TO ALL CLAIMS FOR RELIEF

All allegations not expressly admitted, denied or modified are hereby denied.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE TO ALL COUNTS

The plaintiff failed to mitigate her damages.

## SECOND AFFIRMATIVE DEFENSE TO ALL COUNTS

The defendant is entitled to a set-off in the amount of $25,000 plus 4.85% interest beginning on May 1, 2008 for a loan given to the plaintiff that has not been repaid.

**FIRST AFFIRMATIVE DEFENSE TO COUNT TWO**

The plaintiff's action is barred by the applicable statute of limitations as she did not file a complaint with the CHRO within 180 days of the defendant's alleged adverse action.

**FIRST AFFIRMATIVE DEFENSE TO COUNT THREE**

The plaintiff failed to perform her duties and obligations under the contract.

WHEREFORE, the defendant prays that the Court dismiss the Complaint, and award the defendant such relief as the Court deems proper and just, including, on the First Claim for Relief, Attorneys Fees pursuant to 42 U.S.C. Section 2000e-5(k).

**AMENDED AFFIRMATIVE DEFENSES**

**THIRD AFFIRMATIVE DEFENSE TO ALL COUNTS**

The Complaint fails to state a claim upon which relief can be granted.

**FOURTH AFFIRMATIVE DEFENSE TO ALL COUNTS**

Plaintiff's contract is void or voidable based on her fraudulent misrepresentations which induced defendant to enter into the employment contract.

**FIFTH AFFIRMATIVE DEFENSE TO ALL COUNTS**

Plaintiff is not entitled to punitive damages because of defendant's written anti-discrimination policy.

**SIXTH AFFIRMATIVE DEFENSE TO ALL COUNTS**

Plaintiff's claims should be dismissed or reduced to the extent that defendant discovers after-acquired evidence of wrongdoing by Plaintiff for which her employment would have been terminated.

## SEVENTH AFFIRMATIVE DEFENSE TO ALL COUNTS

Plaintiff's damages, if any, resulted from her own actions, inaction, conduct or performance.

## EIGHTH AFFIRMATIVE DEFENSE TO ALL COUNTS

Plaintiff's claims are barred, whole or in part, by the doctrines of waiver, laches, estoppel, fraud, judicial estoppel, prior breach, legal excuse, and unclean hands. Defendant intends to conduct discovery regarding these affirmative defenses.

## SECOND AFFIRMATIVE DEFENSE TO COUNT TWO

Plaintiff's employment was terminated for legitimate and non-discriminatory business reasons.

WHEREFORE, the defendant prays that the Court dismiss the Complaint, and award the defendant such relief as the Court deems proper and just, including, on the First Claim for Relief, Attorneys Fees pursuant to 42 U.S.C. Section 2000e-5(k).

## ADDITIONAL DEFENSES

Whitby presently has insufficient knowledge or information upon which to form a belief as to whether it has additional, as yet unstated, affirmative defenses available. Accordingly, Whitby reserves the right to assert any other affirmative defenses available to it under the applicable law, in the event they would be appropriate.

WHEREFORE, Whitby respectfully requests that this Court enter judgment in favor of Whitby and against plaintiff (i) dismissing the Complaint with prejudice as to Whitby, (ii)

awarding Whitby costs and attorneys' fees, and (iii) granting such other and further relief to Whitby as the Court deems just and proper.

## WHITBY COUNTERCLAIMS

The Whitby School ("Whitby"), as and for its Counterclaims against Michele Monson ("Dr. Monson"), alleges as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction with respect to Whitby's federal claims pursuant to 18 U.S.C. 1030, 18 U.S.C. 2701, and 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 1367, providing supplemental jurisdiction over Whitby's state law claims.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that Whitby maintains a place of business in the State of Connecticut and Dr. Monson's employment and part of the events of omissions giving rise to the claims herein occurred in the State of Connecticut.

### Relevant Facts

**I.    The Whitby School**

3.    The Whitby School is a not for profit corporation located in Greenwich, Connecticut.

4.    Whitby is a Montessori school, which strives to create a supportive atmosphere for children guided and enriched by inspired teachers.

5.    Dr. Monson was hired as Head of School by Whitby in October 2000 and her employment was extended for periods of time thereafter.

## II. Failure to Discharge Duties as Head of School

6.    Dr. Monson's employment at Whitby was subject to an employment contract beginning effective June 19, 2007. A copy of Dr. Monson's contract is attached as Exhibit A.

7.    The employment contract enumerated various reasons for which Dr. Monson's employment could be terminated for "cause".

8.    Dr. Monson's responsibilities as Head of School included *inter alia*, communicating information to the Whitby Board of Trustees ("the Board") concerning the state of Whitby, the supervision and management of all aspects of school and advocating for Whitby and exercising all powers and duties in furtherance of Whitby's school mission.

9.    Dr. Monson had a contractual duty to provide general supervision and management over all aspects of school operations.

10.    Dr. Monson failed to discharge this duty because she was inaccessible to faculty and staff, was consistently absent from school, and was rarely in the classrooms. Instead, Dr. Monson often conducted personal errands during business hours.

11.    Dr. Monson had a contractual duty to handle all development activities and serve as an advocate for Whitby within the geographical and professional community.

12.    Dr. Monson failed to discharge this duty by failing to maintain a Business Manager for Whitby, mismanaging the financial affairs of Whitby, and bringing Whitby's financial operations into disarray.

13.    Dr. Monson had a contractual duty to inform the Chair of the Board about all significant issues affecting the school.

14.     Dr. Monson failed to discharge this duty by withholding and/or misrepresenting the reasons for the resignation of several valued staff members and misrepresenting her personal inappropriate behavior to the Board.

15.     Dr. Monson had a contractual duty to exercise all powers and duties as Head of School in furtherance of the mission of the school.

16.     Dr. Monson failed to discharge this duty by engaging in inappropriate and injurious behavior; treating faculty and staff in a rude, inappropriate, unprofessional and distasteful manner; disparaging Whitby employees and staff in communications with others; and creating an uncomfortable and hostile work environment resulting in the departure of staff and faculty.

**III.     Misrepresentations to the Board**

17.     Dr. Monson was virtually the only channel of communication between Whitby and the Board.

18.     Dr. Monson made misrepresentations to the Board concerning her strong leadership at Whitby.

19.     In truth, Dr. Monson was not an effective leader and many faculty members left Whitby because of Dr. Monson's lack of leadership.

20.     In February 2008, Dr. Monson misrepresented to the Chair of the Board that as Head of School she had the full support of her staff, with the exception of only two teachers.

21.     In truth, Dr. Monson had virtually no support from her staff.

22.     Dr. Monson misrepresented to the Board that Whitby's finances were in order.

23.     In fact, Whitby was in financial disarray under Dr. Monson.

24.     In a letter to the Board dated May 21, 2006, Dr. Monson misrepresented to the Board that when she fired a teacher, she had the full support of two critical faculty members.

25.     In fact, Dr. Monson did not in fact have full support from either faculty member.

26.     On multiple occasions, Dr. Monson misrepresented the reason for the resignation or termination of school employees to the Board.

27.     For example, on or about October 18, 2007 Dr. Monson misrepresented the reason for the resignation of a Danielle Ciardullo to the Board.

28.     On or about August 21, 2007, Dr. Monson misrepresented the reason for the resignation of Diane Douglas to the Board.

29.     On or about December 13, 2006, Dr. Monson misrepresented that she was disappointed to receive the resignation of Robin Axness ("Axness") and that she did everything within her power to keep Axness at Whitby.

30.     In truth, Dr. Monson did not like Axness and communicated to Whitby employee Debbie Smith that they were lucky to be rid of her.

31.     On or about January 11, 2008, Dr. Monson misrepresented to the Board that Candice Robertson ("Robertson") resigned from Whitby to work in a public school closer to home and that there was nothing she could do to keep Robertson at Whitby as Robertson had already stayed at Whitby longer than she had originally planned.

32. In truth, Dr. Monson never spoke to Robertson regarding her departure, Robertson never suggested that she planned to remain at Whitby for a short or limited time and Robertson's reason for resigning was that she did not want to work for Dr. Monson anymore.

33. Dr. Monson misrepresented to the Board that she hired an assistant for official functions.

34. In truth, Dr. Monson posted an unapproved and inappropriate advertisement for (and utilized) an assistant to take care of numerous personal non-Whitby related activities.

35. In an email dated October 3, 2006, Dr. Monson misrepresented her involvement in inappropriate behavior during a school function to the Board.

## IV. Lack of Leadership

36. Dr. Monson exercised poor leadership, was often unavailable to faculty and staff and was rarely in the classrooms at Whitby.

37. Instead, Dr. Monson was often off campus tending to personal errands.

38. Dr. Monson created a hostile work environment and lead by faculty intimidation and unrest.

39. Dr. Monson was often cruel, offensive, derogatory, abusive, dismissive and inappropriate when communicating through email.

40. Dr. Monson engaged in inappropriate, injurious and disparaging behavior towards Whitby employees and faculty.

41. Dr. Monson often made disparaging comments about staff and faculty via email.

42.     Dr. Monson often blamed others for her failures and pitted faculty against one another.

43.     Dr. Monson's poor leadership style lead to the departure of several Whitby faculty members.

## V.     **Financial Disarray**

44.     Dr. Monson failed to consistently maintain a Business Office Head and was the cause of high turnover and disarray in the Business Office.

45.     Dr. Monson failed to properly manage Whitby's finances with the necessary controls and Business Office Managers to conduct the necessary financial governance and work.

46.     Dr. Monson's failure to properly manage Whitby's finances lead to costly investigations by the IRS and Connecticut Attorney General's Office.

## VI.     **Dr. Monson's Contract Renewal and Subsequent Termination**

47.     Prior to April 2007, Dr. Monson was virtually the only channel of communication between Whitby and the Board.

48.     Based on Dr. Monson's misrepresentations, the Board in place during the 2007 contract negotiations accepted Dr. Monson's version of the state of Whitby affairs and Dr. Monson's role in relation to the faculty and staff at Whitby.

49. .     In or around April 2007, based on Dr. Monson's misrepresentations, the Board renewed Dr. Monson's contract for a six year term beginning June 19, 2007.

50.     On or around July 1, 2007, Whitby's Board gained a new chairman, Ashwin Vasan.

51.     Over the following months, Whitby's Board gained several new members and the Board was thus comprised of a new group of members who, for the most part, had not participated in the contract renewal for Dr. Monson.

52.     In late 2007 and early 2008, the new Whitby Board in the course of ordinary investigation into Whitby affairs learned about some of Dr. Monson's numerous failures, poor leadership, breaches of duties and intentional misrepresentations made during her time as Head of School.

53.     The Board also began to learn of the loss of students, student applications, valued faculty members and significant donors that resulted from Dr. Monson's failure to discharge her duties and the resulting harm to Whitby's reputation.

54.     In early March, 2008, due to her numerous failures, poor leadership, breaches of duties and intentional misrepresentations to the Board, Dr. Monson was asked to resign as Head of School.

55.     Dr. Monson did not resign.

56.     The abovementioned acts, and those described below which were discovered *after* her termination, constituted the requisite "cause" under Dr. Monson's contract allowing Whitby to terminate her for cause and without further notice, namely, pursuant to sections 13(d)(iv) (injurious to reputation of Whitby); (v) (misappropriation of property); (vi) (material breach of obligations); (vii) (moral misconduct). None of these specified grounds for termination under the contract require previous notice to Dr. Monson. *See* <u>Exhibit A</u>.

57.     In early March 2008, the Board terminated Dr. Monson's employment at the Whitby School in a letter dated March 11, 2008 attached as <u>Exhibit B</u>, to Dr. Monson that described various grounds for termination known to the Board at that time (other grounds were discovered later) and which revoked Dr. Monson's privileges at the school and with regard to school property "effective immediately".

## VII.  <u>Misuse of Whitby Computers</u>

58.     Whitby has a computer server, an email provider and computer software programs that run in interstate commerce and over the Internet.

59.     Whitby employees have email accounts with a "whitbyschool.org" address that are used in interstate commerce.

60.     Dr. Monson's employment contract did not grant her Administrator's privileges over the email system or network server at Whitby.

61.     On numerous occasions, Dr. Monson gained access through the Administrator's function (and passwords) to the Whitby email system and server without knowledge of the Board.

62.     During these occasions, Dr. Monson gained unauthorized access to other Whitby employees' email inboxes.

63.     During these occasions, Dr. Monson unlawfully viewed and/or deleted various items in Whitby employee inboxes.

64. Upon information and belief after learning of her impending termination from Whitby, Dr. Monson intentionally gained unauthorized access to Whitby computer data and deleted over 1,500 emails, including over a 1,000 on a single day.

65. Upon information and belief after learning of her termination from Whitby, and after all her privileges with respect to school property had been unequivocally revoked, Dr. Monson intentionally deleted the computer data, programs and software residing on her school-issued computers before returning them to Whitby.

## First Counterclaim
### (Breach of Contract)

66. Whitby repeats and realleges the foregoing allegations of its Counterclaims as if fully set forth herein.

67. As Head of School, Dr. Monson was required *inter alia,* to implement, supervise and manage all aspects of the school, handle all development activities, advocate for the Whitby in the community and keep the Board informed of all significant issues affecting the school all in furtherance of the mission of the school.

68. Whitby complied with all of its contractual obligations pursuant to the contract.

69. Dr. Monson's failure to perform the abovementioned contractual duties breached her contract with Whitby.

70. Dr. Monson also committed the three material breaches set forth in her March 11, 2008 termination letter, namely, (a) failing to discharge her responsibilities; (b) failing to

communicate accurately with the Board; and (c) acting in a manner injurious to the reputation of Whitby.

71.     As a direct and proximate result of the foregoing, Whitby has suffered and is continuing to suffer damages in an amount to be determined at trial, including, without limitation, injury to the reputation of the school, lost tuition due to student enrollment, lost capital contributions, the cost of conducting searches to replace Dr. Monson as Head of School and lost revenue arising from lack of growth in student enrollment.

### Second Counterclaim
### (Conn. Gen Stat 53a-251(e)(2)(A) and (B)
### Misuse of Computer Systems Information)

72.     Whitby repeats and realleges the foregoing allegations of its Counterclaims as if fully set forth herein.

73.     Dr. Monson intentionally and without authorization altered, deleted, tampered with, damaged and erased the contents of the computer data, programs and software on her Whitby issued computers, and destroyed data intended for use on Whitby's computer system and network.

74.     Dr. Monson intentionally and without authorization intercepted and deleted emails intended for employees of Whitby within the Whitby computer system when she accessed and deleted the emails located in inboxes of Whitby employees.

75.     This intentional and reckless unauthorized access and interception of emails residing in and intended for use by Whitby's computer systems caused an environment of paranoia and fear due to the questioned integrity of Whitby's computer systems.

76.     Dr. Monson intentionally and without authorization deleted over 1,500 emails from her Whitby email account.

77.     Dr. Monson intentionally and without authorization deleted data and programs residing on school-issued computers after her termination and before returning those computers to Whitby.

78.     Whitby incurred actual financial losses due to the cost of recovery of the computer data, programs and software.

79. This intentional and unauthorized deletion of the computer data, programs and software made it difficult for Whitby to defend ongoing lawsuits against Whitby by Dr. Monson, other parties and investigations by agencies.

80. Dr. Monson's actions caused Whitby damage including the cost of responding to Dr. Monson's actions, the cost of conducting a damage assessment, and the cost of attempting to restore Whitby's data, programs, systems, and information to its condition prior to Dr. Monson's actions, and other consequential damages incurred due to Dr. Monson's actions.

81. The cost of computer data recovery has been and will continue to be well over $5,000 and is continuing as Whitby tries to restore data and programs that have been lost as a result of Dr. Monson's actions.

### Third Counterclaim
### (18 U.S.C. 2701(a) Stored Communications Act)

82. Whitby repeats and realleges the foregoing allegations of its Counterclaims as if fully set forth herein.

83. Dr. Monson intentionally exceeded her authority by accessing Whitby's electronic information without authorization, deleting computer data, programs and files from her Whitby issued computers, and deleting emails from other employee's email boxes.

84. Dr. Monson thereby obtained and altered access to Whitby's electronic communications that occurred in interstate commerce and over the Internet in excess of her authorization.

85. Dr. Monson caused Whitby damage through the loss of data, programs and files and the cost of recovery relating to the alteration and deletion of Whitby computer data.

86. This intentional unauthorized access and deletion of data, programs and emails in electronic storage in Whitby's computer systems caused an environment of paranoia and fear due to the questioned integrity of Whitby's computer systems.

87. Whitby incurred actual financial losses due to the cost of recovery of Whitby computer data, programs and software.

88. Dr. Monson's actions caused Whitby damage including the cost of responding to Dr. Monson's actions, the cost of conducting a damage assessment, and the cost of restoring Whitby's data, programs, systems, and information to its condition prior to Dr. Monson's actions, and other consequential damages incurred due to Dr. Monson's actions.

89. Whitby actually incurred over $5,000 in costs to try to restore its computer data and Whitby incurred additional costs in employee time and resources devoted to addressing the loss of computer data.

### Fourth Counterclaim
### (18 U.S.C. 1030(a)(2)(C) Computer Fraud and Abuse Act)

90. Whitby repeats and realleges the foregoing allegations of its Counterclaims as if fully set forth herein.

91. Dr. Monson intentionally accessed Whitby's protected computers used in interstate commerce and on the Internet by exceeding her authorization.

92. Dr. Monson intentionally obtained information and altered and destroyed computer data and programs from Whitby's protected computers.

93. Dr. Monson's above described actions were taken purposefully and intentionally in furtherance of an intended fraud.

94. Dr. Monson's actions caused Whitby damage including the cost of responding to Dr. Monson's actions, the cost of conducting a damage assessment, and the cost of restoring Whitby's data, programs, systems, and information to its condition prior to Dr. Monson's actions, and other consequential damages incurred due to Dr. Monson's actions.

95. As a result of the above actions, Dr. Monson caused damages for recovery costs of the data accessed and deleted that Whitby has actually incurred well in excess of $5,000.

**Fifth Counterclaim**
**(Breach of Fiduciary Duty)**

96. Whitby repeats and realleges the foregoing allegations of its Counterclaims as if fully set forth herein.

97. As the Head of School of Whitby, Dr. Monson owed Whitby a duty of loyalty and due care, including full disclosure, fair dealing, honesty and utmost good faith.

98. Dr. Monson's conduct described hereinabove, including, without limitation, her disparagement of Whitby employees, her deletion and destruction of Whitby computer data and her misrepresentations to the Board constitutes a breach of her fiduciary duties that she owed to Whitby.

99.     Dr. Monson's breach of her fiduciary duties to Whitby has directly and proximately caused injury to Whitby.

100.    As a direct and proximate result of Dr. Monson's breach of her fiduciary duties owed to Whitby, Whitby has suffered damages in an amount to be determined at trial.

### Sixth Counterclaim
### (Breach of Covenant of Good Faith and Fair Dealing)

101.    Whitby repeats and realleges the foregoing allegations of its Counterclaims as if fully set forth herein.

102.    Dr. Monson was employed by Whitby pursuant to an employment contract.

103.    At all times Whitby dispatched its duties under the contract.

104.    Implied within every contract is the covenant of good faith and fair dealing.

105.    Dr. Monson acted with subterfuge and evasion and in bad faith in her conduct with the Board.

106.    Dr. Monson disparaged the school in communications with others.

107.    Dr. Monson in bad faith and with a dishonest and malicious purpose, misrepresented to the Board facts about her behavior, her management of the school, the state of the school finance office, and the reasons for firings and resignations of Whitby employees.

108.    Dr. Monson intentionally and with malicious purpose and subterfuge exceeded her authority and accessed and deleted electronic files, data and programs belonging to Whitby.

109.    By these acts and practices, Dr. Monson failed to act in good faith, acted with a design to mislead the Board, and did not deal fairly with Whitby.

110.    As a result of Dr. Monson's breach of the duty of good faith and fair dealing, Whitby was injured and Whitby has suffered and is continuing to suffer damages, including, without limitation, lost tuition due to student attrition, lost capital contributions, the cost of conducting searches to replace Dr. Monson as Head of School and lost revenue arising from lack of growth in student enrollment.

## V.    **PRAYER FOR RELIEF**

WHEREFORE, Whitby prays for the following relief:

(1)    A determination that Dr. Monson breached her employment contract and an appropriate monetary award to Whitby as a result of that breach;

(2)    Damages pursuant to Conn. Gen. Stat. 52-570b(c) for injury to person, business or property; 18 U.S.C. 2707(b)(3) for actual damages suffered; and 18 U.S.C. 1030(g) for actual damages suffered in amount to be determined by the court but not less than $5,000;

(3)    Treble damages pursuant to Conn. Gen. Stat. §52-570b(c) resulting from plaintiff's willful and malicious conduct; and under 18 U.S.C. 2707(b)(3) for willful or intentional conduct for damages suffered in amount to be determined by the court;

(4)    Damages for Whitby's economic and non-economic losses as a result of Plaintiff's wrongful conduct under common law for damages suffered in amount to be determined by the court;

(5)    Attorneys' fees and costs of this action, pursuant to Conn Gen. Stat. 52-570(b)(e); 18 U.S.C. 2707(b)(3); and under common law due to Plaintiff's bad motive and malicious conduct;

(6)     An order directing restitution for harm to Whitby computer systems under Conn. Gen. Stat. 52-570b(a)(2); and

(7)     Any other relief as this Court deems just and proper.


THE DEFENDANT,
THE WHITBY SCHOOL, INC.,


By: /s/Jonathan Katz
        Jonathan Katz (ct00182)
        JACOBS, GRUDBERG, BELT, DOW & KATZ P.C.
        350 Orange Street
        New Haven CT 06511-0606
        Tel: (203) 772-3100
        Fax: (203) 772-1691
        email: jkatz@jacobslaw.com

## CERTIFICATION

This is to certify that on May 5, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court(s) electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

David S. Golub, Esq.
Jonathan M. Levine, Esq.
Silver, Golub & Teitell, LLP
The Heritage Building
184 Atlantic Street
P. O. Box 389
Stamford, CT 06904

BENCH COPY TO:

The Honorable Mark R. Kravitz
U.S. District Court
141 Church Street
New Haven, CT 06510

/s/Jonathan Katz
Jonathan Katz